**AFFIDAVIT**

I.  **Introduction**

1. I, Scott Murray, having been duly sworn, depose and state I am certified explosives specialist (CES) and a special agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed with the ATF for approximately 18 years. Prior to working for the ATF, I worked as a police officer for the Phoenix, Arizona Police Department for nearly five years. I am familiar with federal laws relating to explosives, bombs, firearms, and narcotics. I have been trained in the investigation of said offenses, and have participated in related investigations.

2. I submit this affidavit in support of an application for the issuance of a warrant to search the residence and property located at 1679 White Road in Corinth, Vermont (herein after referred to as the "Subject Property"), which is described with greater particularity in Attachment A, which is attached hereto and incorporated herein. As described below, there is cause to believe that the Subject Property contains evidence with respect to violations of the federal explosives laws, specifically Providing Explosive Materials to a Prohibited Person in violation of 18 U.S.C. § 842(d); Possession of Stolen Explosive Materials in violation of 18 U.S.C. § 842(h); Possession of Explosives by a Prohibited Person in violation of 18 U.S.C. § 842(i); the Illegal Storage of Explosive Materials in violation of 18 U.S.C. § 842(j); and Aiding and Abetting in violation of 18 U.S.C. § 2 or Conspiracy in violation of 18 U.S.C. § 371 to commit the above offenses.

3. The information contained in this affidavit is based upon my training, experience, and investigation, as well as information conveyed to me by other law enforcement officers. The following is either known to me personally or has been related to me by persons having direct

1

knowledge of the events described below, including other law enforcement officers involved in this investigation. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation.

**II.     Probable Cause**

4.      Probable cause exists to believe evidence of unrecovered high explosive materials would be found within the residence and on the property located at 1679 White Road in Corinth, Vermont.

5.      On July 7, 2019, at approximately 2:30 A.M., Mattiace was operating a 2002 Honda Civic sedan, Vermont license plate number HGG899, driving northbound on Interstate-91 in Hartford Vermont. Mattiace was stopped by Hartford, Vermont Police Department officer Eric Clifford for traffic violations and contacted by the officer after pulling over. The vehicle license plate was loosely attached and was registered to Mattiace's Chevrolet Suburban vehicle. Mattiace admitted his driving privilege was suspended, stated the Honda sedan was his girlfriend's vehicle, and said they recently argued over getting it registered properly.

6.      The Officer called to have the vehicle towed from Interstate-91 because it could not be legally operated by Mattiace and had incorrect license plates attached. Mattiace was released from the scene. The officer conducted a standard inventory search of the vehicle prior to it being towed to ensure no valuable nor dangerous items were present. Upon looking inside, the officer observed a plastic bag with a white crystalline substance in the front pocket of a tool bag. The officer believed the controlled substances to be consistent with crystal methamphetamine or other illegal synthetic drugs termed "bath salts."

7.      The officer stopped the inventory and applied for a search warrant of the vehicle, which he later obtained. In searching the vehicle further the officer found approximately 1.5

2

grams of white crystalline powder consistent with methamphetamines or "bath salts," a suspected drug pipe, and a digital scale with powder residue on it in the vehicle.

8. The officer also observed a suspected hand grenade in the rear seating area along with other explosive materials and contacted the state police bomb squad for immediate assistance. The bomb squad took custody of the items pending further investigation.

9. On July 8, 2019, I met with Trooper Matthew Sweitzer of the state police bomb squad and reviewed over the recovered explosive materials and potential hand grenade. After conducting X-rays and other analysis it was determined the potential grenade was not functional (inert) and did not have explosive materials located inside. Upon reviewing the explosive materials, I found a section of approximately two and one half feet of dark green colored detonation cord (detonating cord) with a white solid core consistent with the high explosive chemical called pentaerythritol tetranitrate (PETN), a highly regulated explosive material. This item was consistent with military M456-type detonation cord. Investigators subsequently utilized a chemical identification analyzer to analyze the white powder core, which confirmed the presence of PETN. I also reviewed a section of time-fuse material with a black powder explosive core, which had a blasting cap factory crimped onto the end. Trooper Sweitzer utilized the X-ray equipment to confirm the presence of explosive materials inside the blasting cap (detonator) which typically contain PETN and other initiating high explosive materials inside. This blasting cap was consistent with that of a military M14-type blasting cap. I later took custody of these explosive materials as evidence in the investigation.

10. On July 9, 2019, I interviewed Mattiace regarding his possession of explosives as a previously convicted felon. Mattiace admitted the explosives were his and admitted he had between five to seven prior felony convictions in Alabama and New Hampshire. Mattiace claimed that he had found the detonation cord, time fuse, blasting cap (detonator), and a fuse

3

igniter inside of piece of furniture that his family member had given him. Mattiace claimed he was on his way to bury the explosive materials when he was stopped with the explosives, the inert grenade and methamphetamine inside his vehicle. Mattiace admitted he had transported the materials from Vermont to New Hampshire and then back into Vermont. Mattiace denied selling methamphetamine but admitted he was a regular user and had possession of it on that occasion. Mattiace brought me into his residence where I observed a box of .22 caliber ammunition, which I seized as evidence in the investigation, among other evidence.

11. On July 15, 2019 I conducted a follow up search of the Honda vehicle that Mattiace was driving, where I recovered a dark green colored fuse igniter, consistent with that of a military M81-type fuse igniter. I also located a single round of .223 caliber ammunition.

12. In reviewing Mattiace's criminal history and contacting the courts, I found Mattiace has six prior felony convictions including four convictions in the state of Alabama and two convictions in the state of New Hampshire.

13. On August 6, 2019 I along with other ATF Agents took Mattiace into custody in front of his residence in East Corinth, Vermont pursuant to a federal arrest warrant for being a felon in possession of explosives. The complaint and affidavit supporting this federal arrest warrant are attached hereto and incorporated herein as Exhibit 1. Mattiace was advised of his *Miranda* rights and consented to the search of his residence. ATF agents were assisted in the search by troopers with the state police in searching his residence and property. Mattiace had a large sign inside his residence on the wall stating, "Green Mountain Explosives." Investigators recovered approximately forty-nine rounds of firearm ammunition inside his residence along with approximately eleven grams of suspected methamphetamine inside. Mattiace admitted he had recently obtained approximately one-half ounce (14 grams) of methamphetamine and the recovered methamphetamine was what he had left over after using some of it. Also inside I

located the a Samsung cellular telephone, which I displayed to Mattiace who confirmed it was his and voluntarily provided the screen code in order to unlock the phone. Mattiace stated he was not using the cellular telephone to deal methamphetamines to any customers but was using it for obtaining methamphetamines from his suppliers and for contact with his drug associates.

14. On August 15, 2019, a grand jury sitting in the District of Vermont returned a one-count indictment against Mattiace, which charged him with, knowing that he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessing explosives, to wit, a blasting cap, detonation cord, and PETN, which had been shipped or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 842(i).

15. On August 30, 2019, I along with the federal prosecutor met with Mattiace and his legal representatives regarding the investigation. Mattiace denied that he was distributing methamphetamines even though he had larger quantities of the controlled substance in his possession at times and had a weight scale in his vehicle. Mattiace admitted he was at times part of a drug conspiracy where he would obtain money from acquaintances in order to bulk purchase methamphetamines that he would subsequently provide to them. Mattiace stated if he purchased larger quantities of methamphetamines, the price was much lower. Mattiace advised he would utilize the cellular phone along with social media platforms on his phone to contact drug suppliers and drug associates related to those activities. Mattiace stated he utilized drug distributors in Vermont and New Hampshire.

16. When initially asked about the explosive materials recovered from his vehicle, Mattiace initially maintained that he had found them inside of the large desk he received from his mother and family member. However, on August 30, 2019, Mattiace stated he had information about an individual who had possession of C-4 explosives and had given some to others. C-4 explosives is an acronym for the high explosive termed composition 4, which utilizes a

plasticizer along with a high explosive chemical composition of cyclotrimethylenetrinitramine also called RDX. C-4 explosives are utilized by the military, law enforcement and commercial businesses for disposal operations and targeted demolition. I noted the fuse-igniter, time-fuse, detonation cord and blasting cap that was recovered from Mattiace's possession were consistent with associations with C-4 explosives where the blasting cap and/or detonation cord could be used to initiate the C-4 explosives.

17.     Mattiace stated he was reluctant to provide any information as the subject was a friend to him and was in the United States military currently. However, in hopes of receiving credit from the government for his cooperation, Mattiace advised that he wanted to be honest about how he had come into possession of the explosive materials. Mattiace stated he had in fact received the explosive materials from his friend Jeremy Longto, who is in the U.S. Army currently and apparently had stolen the explosive materials from the military. Mattiace described Longto as a white male in his mid-thirties and overweight, weighing about two hundred and fifty pounds. Mattiace showed me the area on a map of where Longto is living, which Mattiace stated was in the area of Fairground Road off Route 25 and Taplin Hill Road in Corinth, Vermont.

18.     Mattiace stated that, after the recovery of the explosive materials from the vehicle he was driving in July of 2019, he relayed the information about the investigation to Longto, who, along with another individual, buried approximately "two and one-half blocks" of apparently stolen C-4 explosives. Mattiace stated that he had sent a message to Longto using his cellular telephone, which indicating that Mattiace had been contacted by police related to the explosives so that Longto would know to take steps in order to better hide the explosive materials that Longto possessed. Mattiace stated he did not explicitly tell Longto, via text message, about the initial traffic stop nor his ATF interview, but instead used vague language. Mattiace stated Longto told him to stop messaging him about it, apparently fearful the messages

could implicate Longto.

19. Mattiace stated that Longto had possession of C-4 explosives and buried it inside a metal ammunition box on his property in an area that borders apparent public land. Mattiace stated he had previously witnessed Longto in possession of C-4 explosives, which he described as rectangle in shape several inches long and a few inches wide, dark green in color with yellow lettering on the front packaging. Mattiace stated about six to eight years prior he was with Longto when Longto provided him the fuse igniter, time-fuse, detonation cord and blasting cap. Mattiace stated Longto had it in his vehicle and wanted Mattiace to take it while Longto went out with his girlfriend, apparently not wanting it in the vehicle with them. Mattiace stated he took the explosives material back to his residence and stored it there. Mattiace stated Longto asked about the materials and told him, "don't let anyone get their hands on it" but Mattiace stated Longto did not request to get the explosives back. Mattiace stated he had also been shown a video by Longto where they utilized apparent C-4 explosives to dispose of munitions or other items they encountered in the course of Longto's work in the military. Mattiace stated around that same time-period Longto had gone to a mutual friend's residence and allegedly set off a small quantity of C-4 explosives for him and others to see. Mattiace stated Longto allegedly left behind a small amount of C-4 for another individual, who later attempted to set it off with a typical fuse but could not get it to ignite or explode. I noted C-4 explosives typically requires a blasting cap (detonator) or other high explosives to be set off.

20. I subsequently contacted the U.S. Army Criminal Investigation Division, which later verified on September 3, 2019, that Longto is in fact a current member of the U.S. Army and had positions within the military that gave him the opportunity to possess and potentially steal smaller quantities of C-4 and/or other explosive materials. The Army CID advised Longto is a member of the Vermont National Guard out of the Rutland and Bradford, Vermont areas.

7

The military employ several safeguards and accounting to attempt to ensure no explosive materials are stolen, however at times individuals are able to avoid detection.

21. I conducted a search of the Vermont police incident system, in which I found Jeremy Longto living at 1679 White Road in Corinth, Vermont, the same area identified by Mattiace. The subject is listed as a white male thirty-nine years old, five-foot eleven inches tall and two hundred and twenty pounds. Longto had a phone number listed as (802) 272-0052. I also conducted a credit history inquiry, finding Longto was listed as having a current address of 1679 White Road in Corinth, Vermont in the system.

22. In one incident in August of 2019, his former wife reported that Longto was contacting her and harassing her in June, July and August of 2019 in violation of court ordered conditions of release. Longto's former wife reported he sent text messages to her stating he was set to be "deployed soon" for the military and previously stated, "you use to be proud of your soldier." Longto allegedly sent a message to his former wife in July of 2019 stating, "I'm sick to my stomach because of you." Longto was subject to court ordered conditions of release not to have contact with his former wife with the exception of parental contact with their child in common. The court ordered conditions were ordered after Longto was charged with Stalking in May of 2019 after he allegedly had hidden a video camera in her bedroom while visiting with their child inside her residence where she lived separate from Longto.

23. On September 19, 2019, after receiving consent to search, I accessed and reviewed Mattiace's cellular telephone, which was recovered at the time of Mattiace's arrest by ATF. Upon reviewing cellular phone text messages, I observed that Mattiace had numerous contacts with the same cellular telephone number of (802) 272-0052, described above and believed to be Jeremy Longto. Mattiace had exchanged messages with Longto shortly following my interview with him on July 9, 2019. The message sent to Longto stated "My phone could be

8

compromised, I have an unfortunate set of circumstances that we need to discuss.....asap." Mattiace then stated, "I will come by tonight give me a time!" Mattiace then stated, "Do you copy?" Longto responded, "I tried calling n didnt go threw." In reviewing through prior conversations that took place between the two, I observed Longto make references to being at the "Guard" base in White River Junction, Vermont; in addition to speaking about being at the military "armory" and made reference to his former wife detailed in the above paragraph using her same first name.

    24.    I conducted a criminal history inquiry of Longto finding he had been arrested for a misdemeanor for DUI in Vermont in February of 2015, for Stalking in May of 2019 and for Violation of Conditions of Release in August of 2019. Longto was listed as weighing two hundred and fifty-five pounds on his criminal history record in Vermont consistent with his description given by Mattiace. Longto also had prior misdemeanor arrests in Kentucky including Disorderly Conduct and Resisting Arrest in March of 2010.

    25.    I have specialized training and experience on the manufacturing process and locations of high explosives such as PETN, C-4 and blasting caps. There are current and former factory locations in the United States and other countries that manufacture such products that I am aware of, but not in Vermont. In order for a company to manufacture explosive materials and sell those materials they are required under federal law to obtain a federal explosives license from ATF. I have also conferred with ATF industry operations, which provides any required licenses for any such permits to manufacture explosives in the United States to confirm such companies are and were not in Vermont. I am also aware that the U.S. military utilizes these same ATF licensed explosive manufacturing facilities, has only limited separate manufacturing locations for these types of explosive materials and have reported they have not manufactured such materials within the State of Vermont. I determined based upon my training, experience,

and consultations that the high explosive materials involved in this investigation were manufactured outside the State of Vermont and therefore traveled in or affected interstate commerce before Mattiace or Longto possessed them. In addition, Mattiace stated the explosive materials he received from Longto, were transported by him from Vermont into New Hampshire and back into Vermont again.

26. Based on my training and experience, I know that it is a violation of 18 U.S.C. § 842(d), for any person to provide explosive materials to an individual who is prohibited under federal law from possessing explosives.

27. Based on my training and experience, I know that it is a violation of 18 U.S.C. § 842(h) for any person to possess, conceal, or store any stolen explosive materials, which has been shipped or transported in interstate or foreign commerce either before or after such materials were stolen, knowing or having reasonable cause to believe that the explosive materials were stolen.

28. Based on my training and experience, I know that it is a violation of 18 U.S.C. § 842(i) for any person, knowing that he or she had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, to knowingly possess explosives, which had been shipped or transported interstate or foreign commerce.

29. Based on my training and experience, I know that it is a violation of 18 U.S.C. § 842(j) for any person to store any explosive material in a manner not in conformity with storage regulations promulgated by the Attorney General. *See* 27 C.F.R. § 555.201 *et seq.*

30. Based on my training and experience, I know that it is a violation of 18 U.S.C. §§ 2 and 371 to aid and abet or conspire, respectively, to commit the above offenses.

31. In searching the Subject Property investigators would look for evidence related to Jeremy Longto's possession of high explosive materials being improperly stored and stolen

10

explosive materials taken from the U.S. military or illegally obtained from other means and displayed or provided to others as alleged.

32. I know based upon my training and experience that individuals who possess and utilize high explosive materials utilize associated initiating systems to detonate the explosive materials, utilize wiring to initiate explosive detonators, utilize specialized non-friction cutting tools for cutting such explosive materials, utilize insulated electrical tape for covering exposed wiring, and utilize specific storage containers for such explosive materials.

33. I know based upon my training and experience that individuals who bury illegal contraband in the ground often leave the contraband in the ground for extended periods of time in fear of being caught in possession of such items by police and to have access to them in the future if needed.

34. As discussed above, I submit that there is probable cause to believe that evidence of the offenses referenced in the paragraphs above, set forth in Attachment B, will be located on the Subject Property.

Dated at Burlington, in the District of Vermont, this 25th day of September, 2019.

Special Agent Scott Murray
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me this 25th day of September, 2019.

Hon. JOHN M. CONROY
United States Magistrate Judge

11